UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division

Case No. 0:17-cv-61588-Altonaga/Seltzer

ALTTRIX, LLC and GLOBAL DATA
TELECOM, LLC,

    Plaintiffs,

vs.

MOBILEWARE, INC., GLOBALWARE, INC.,
and STEVEN HIGGINS,

    Defendants.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND DISMISS/STAY PROCEEDINGS**

Plaintiffs, Alttrix, LLC ("Alttrix") and Global Data Telecom, LLC ("GDT"), respectfully submit this response in opposition to Defendants GlobalWare, Inc. ("GlobalWare"), MobileWare, Inc. ("MobileWare"), and Steven Higgins' ("Higgins") Motion to Compel Arbitration and Dismiss/Stay Proceedings [DE 37] ("Motion to Compel"), and rely on the following Memorandum of Law in support thereof.

**MEMORANDUM OF LAW**

**I.    INTRODUCTION**

Defendants incorrectly allege that the GlobalWare Digital Advantage Agreement (the "DAA") constituted a valid and enforceable contract between Alttrix and GlobalWare and inappropriately seek to enforce an arbitration clause alleged to be contained therein. However, as explained in more detail below, the DAA fails to constitute a valid and enforceable contract due to lack of formation, as Alttrix never assented to all of the DAA's terms. Accordingly,

1

Plaintiffs never assented to arbitrate the disputes at issue and Defendants' Motion to Compel must be denied.

## II.     FACTUAL BACKGROUND

In late 2016 and early 2017 Plaintiffs and Defendants negotiated a business arrangement for Defendants to provide Plaintiffs with "white label" cellular hardware and cellular voice and data services that Plaintiffs could rebrand and resell to its customers under Plaintiffs' branding. On January 14, 2017, Jonathan Wilcheck ("Wilcheck"), Vice President of Alttrix and GDT received an email from Steven Higgins ("Higgins") (the "Initial Proposal Email"), attached hereto as Exhibit 1, containing MobileWare / GlobalWare's initial proposal for an agreement pertaining to Alttrix / GDT selling MobileWare / GlobalWare's cellular hardware and cellular voice and data services to Alttrix / GDT's clients. Attached to the Initial Proposal Email were: (A) an Agent Sales and Compensation Agreement as a PDF file, attached hereto as Exhibit 2; (B) a Managed Mobility Services Addendum as a PDF file, attached hereto as Exhibit 3; (C) a Wholesale Addendum as a Microsoft Word file, attached hereto as Exhibit 4. There is no proposal to arbitrate disputes or "arbitration clause" in the Initial Proposal Email (Exhibit 1) or any of its attachments, including the Agent Sales and Compensation Agreement (Exhibit 2), the Managed Mobility Services Addendum (Exhibit 3); and the Wholesale Addendum (Exhibit 4). Indeed the Agent Sales and Compensation Agreement (Exhibit 2) specifically contemplates the parties thereto being permitted to pursue legal action against each other. *See* Exhibit 2, at p. 6 § 9.2 ("Except for indemnification actions arising in connection with paragraph 9, neither party may <u>bring legal action</u> or assert a claim with respect to this agreement more than twelve (12) months after the cause of action or claim accrues.") (emphasis added).

2

After January 14, 2017, Wilcheck had further negotiations and communications with Higgins about the proposed agreement. During the course of these negotiations and communications, Higgins agreed to modify several terms from those provided in the Initial Proposal Email and its attachments. Importantly, Higgins agreed that MobileWare / GlobalWare: (A) would provide "white label" cellular hardware and cellular voice and data services that Alttrix / GDT could resell to their customers under Alttrix / GDT's branding, *see* Exhibit 5, and (B) provide, under Alttrix / GDT's branding, back-end and support functions for cellular hardware and cellular voice and data services to Alttrix / GDT's customers. During these negotiations and communications, the issue of arbitrating disputes was not brought up or addressed.

During the course of these negotiations, Higgins provided Wilcheck with only pages 1 – 6 of the GlobalWare Digital Advantage Agreement (the "DAA"). Despite Wilcheck's repeated requests, Higgins has failed to provide Wilcheck with an agreement that correctly reflected the terms which had negotiated. However, Higgins requested that Wilcheck sign the DAA so that the parties could get started and assured Wilcheck that such terms would be corrected in the near future.

On February 8, 2017, Wilcheck signed page 1 and initialed pages 1 through 6 of the DAA on behalf of Alttrix as a promoter for GDT and emailed the same to Higgins, strictly based on Higgins' assurances that a correct agreement would be provided to Wilcheck in the near future. On February 9, 2017, Higgins send Wilcheck an email, attached hereto as Exhibit 6, attaching a fully executed copy of pages 1 through 6 of the DAA that he had countersigned and counter-initialed, attached hereto as Exhibit 7.

On February 12, 2017, Wilcheck received an email from Higgins providing pages 7 – 24 of the DAA for the first time. No agent, employee, officer, director, member, or manager of Alttrix or GDT had seen or received pages 7 – 24 of the DAA prior to February 12, 2017. No agent, employee, officer, director, member, or manager of Alttrix or GDT signed, initialed, executed, agreed, or otherwise manifested consent to pages 7 – 24 of the DAA, or the arbitration clause contained on pages 16 – 18 thereof. No agent, employee, officer, director, member, or manager of Alttrix or GDT discussed pages 7 – 24 of the DAA, or the arbitration clause contained on pages 16 – 18 thereof, with Higgins or any agent, employee, officer, or director of MobileWare or GlobalWare.

On March 10, 2017, Higgins finally sent Wilcheck an email, attached hereto as Exhibit 8, attaching a proposed updated version of the DAA ("UDAA"), attached hereto as Exhibit 9, that reflected, amongst other things, Plaintiffs' ability to resell MobileWare / GlobalWare's cellular hardware and cellular voice and data services to Plaintiffs' clients. No agent, employee, officer, director, member, or manager of Alttrix or GDT signed, initialed, executed, agreed, or otherwise manifested consent to the UDAA.

The relationship between Plaintiffs and Defendants was strictly operating under course-of-dealings. Plaintiffs were induced into this course-of-dealings through Higgins' fraudulent statements and representations.

### III.   ARGUMENT

"Arbitration is strictly a matter of consent" and strictly requires that "the parties have agreed to submit to arbitration." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010) (internal quotations omitted). As such, in "deciding whether the parties agreed to

arbitrate a certain matter … courts generally … should apply ordinary … principals that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

Here, compelling arbitration would be improper as the parties never entered into a contract, much less one that contains an agreement to arbitrate. While Plaintiffs and Defendants extensively negotiated the terms of their business relationship, it was never reduced to a contract with the necessary "reciprocal assent to a **certain and definite proposition**." *Strong & Trowbridge Co. v. H. Baars & Co.*, 60 Fla. 253, 54 (1910) (emphasis added). In the analysis of whether the parties formed a contract agreeing to arbitrate *DiMase v. Aquamar 176, Inc.*, 835 So. 2d 1150 (Fla. 3d DCA 2002), *dissent adopted on rehearing*, 835 So. 2d 1158 (Fla. 3d DCA 2003), is directly on point, materially indistinguishable, and outcome dispositive of the Defendant's Motion to Compel.

In *DiMase*, the "buyer" of a condominium executed four documents that were prepared by the "seller," a purchase agreement, an amendment to the purchase agreement, an addendum, and a receipt for condominium documents. *DiMase*, 835 So. 2d at 1153. Thereafter, the seller became wanted to further specify the type of flooring to be installed and provided a revised addendum to the buyer. *Id.* at 1154. The buyer never executed the revised addendum, and brought suit to recover its deposit. *Id.* In review of those facts, the court found that no contract had been created as the parties had not reached a "meeting of the minds." *See Id.* at 1154-58 (Ramirez, J., dissenting), *adopted on rehearing*, 835 So. 2d 1158.

In making its decision, the court noted that "[i]n the process of making a contract, either orally or in writing, the parties may express their assent piecemeal, agreeing upon individual terms as the negotiation proceeds. These expressions are merely tentative and are inoperative in themselves; **there is no contract until the parties close their negotiation and express assent**

**to all the terms of the transaction together**." *Id.* at 1154 (quoting Corbin on Contracts § 2.10, at 170-71 (Joseph M. Perillo ed., rev. ed. 1993)) (emphasis in original). Moreover, it recognized the longstanding principal that "[i]n order to create a contract, it is essential that there could be a reciprocal assent to a **certain and definite proposition**." *Id.* at 1156 (quoting *Strong & Trowbridge Co. v. H. Baars & Co.*, 60 Fla. 253, 54 (1910) (emphasis added). Indeed, "[s]o long as any essential matters are left open for further consideration, the contract is not complete …." *Id.* (quoting *Strong & Trowbridge*, 60 Fla. at 54).

Here, just like in *DiMase*, Plaintiffs and Defendants never agreed on all of the material terms of a contract. Indeed, as set forth above, the Plaintiffs and Defendants never agreed on the most material term – Plaintiffs ability to resell MobileWare / GlobalWare's "white label" cellular hardware and cellular voice and data services to their customers under Alttrix / GDT's branding. This, the *raison d'être* for the relationship between Plaintiffs and Defendants, was never reduced to a contract adopted by the Plaintiffs and Defendants at the time Plaintiffs discovered Defendants' fraud.

The parties never fully executed a contract, much less one containing an arbitration clause. Moreover, just like in *DiMase*, Defendants sent Plaintiffs updated terms. The updated terms were an offer and make clear that there was no prior agreement. The offer was never accepted and there was never a meeting of the minds on all of the material terms of a contract. Consequently, the arbitration clause, which at best, may be considered part of an offer, is unenforceable.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court deny Defendants' Motion to Compel and grant Plaintiffs all such other relief as the Court deems just and proper.

Dated: November 15, 2017.

          Respectfully submitted,

*/s/ David F. Tamaroff*
**David F. Tamaroff, Esq.**
Florida Bar No. 92084
Email: dt@lipscombpartners.com
**M. Keith Lipscomb, Esq.**
Florida Bar No. 429554
Email: kl@lipscombpartners.com
**LIPSCOMB & PARTNERS, PLLC**
25 SE 2nd Avenue, 8th Floor
Miami, Florida 33131
Telephone: (786) 431-2228
Facsimile: (786) 431-2229
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on November 15, 2017, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system and served on the parties or their counsel of record indicated on the Service List below through the CM/ECF system or some other authorized manner.

By: */s/ David F. Tamaroff*
David F. Tamaroff, Esq.

## SERVICE LIST

**Niels P. Murphy, Esq.**
Email: nmurphy@murphyandersonlaw.com
Email: scassidy@murphyandersonlaw.com
**Christopher D. Chamberlain, Esq.**
Email: cchamberlain@murphyandersonlaw.com
Email: pmarchman@murphyandersonlaw.com
**MURPHY & ANDERSON, P.A.**
1501 San Marco Boulevard
Jacksonville, Florida 32207
Telephone: (904) 598-9282
Facsimile: (904) 598-9283
*Counsel for Defendants MobileWare, Inc. and GlobalWare, Inc.*